UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHANNA LOVE WILDER,

          Plaintiff,

      v.                                       Case No. 19-CV-1878

ANDREW M. SAUL,
Commissioner of the Social Security Administration,

          Defendant.

## DECISION AND ORDER

### 1. Introduction

Plaintiff Shanna Love Wilder alleges she has been disabled since December 13, 2013. (Tr. 261.) She seeks disability insurance benefits and supplemental security income. After her application was denied initially (Tr. 119-20) and upon reconsideration (Tr. 160-81), a hearing was held before an administrative law judge (ALJ) on September 20, 2018 (Tr. 31-56). On January 7, 2019, the ALJ issued a written decision concluding that Love Wilder was not disabled. (Tr. 10-24.) After the Appeals Council denied Love Wilder's request for review on October 16, 2019 (Tr. 4-9), she filed this action. All parties have

consented to the full jurisdiction of a magistrate judge (ECF Nos. 5, 8), and this matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that "[t]he claimant has not engaged in substantial gainful activity since December 13, 2013, the alleged onset date." (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Love Wilder has the following severe impairments: "obesity, fibromyalgia, rheumatoid arthritis, adjustment disorder, degenerative disc disease." (Tr. 15.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-

month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 16.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Love Wilder has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is unable to climb ladders, ropes, and scaffolds; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, crouch, crawl, and kneel; she can frequently handle and finger bilaterally; she cannot have exposure to unprotected heights and unprotected moving machinery; she is limited to understanding, carrying out, and remembering no more than simple instructions; she is limited to simple, routine, and repetitive tasks performed in an environment free from fast-paced production requirements, involving only simple, work-related decisions and few, if any, workplace changes.

(Tr. 17.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that "[t]he claimant is unable to perform any past relevant work." (Tr. 22.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 22.) Specifically, she could work as a Final Assembler, DOT Number 713.687-018, Electronics Assembler, DOT Number 726.685-066, and Document Preparer, DOT Number 249.587-018. Therefore, the ALJ found that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from December 13, 2013, through the date of this decision." (Tr. 23.)

**3. Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

It is the plaintiff's burden to prove that she is disabled and to show that the ALJ committed a prejudicial error. *Kirby v. Colvin*, No. 2:14-cv-00252-WTL-MJD, 2015 U.S. Dist. LEXIS 80517, at *14 (S.D. Ind. May 28, 2015) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009); *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984)).

**4. Analysis**

**4.1. TMJ and Headaches**

Love Wilder argues that the ALJ erred when he "failed to address the effect that Ms. Love Wilder's TMJ [(temporomandibular joint)] dysfunction and migraine headaches have on her ability to work." (ECF No. 14 at 21.) She continues,

> Based on the record, the ALJ should have determined that Ms. Love Wilder's TMJ dysfunction and migraines were severe impairments; in the alternative, the ALJ should have at the least recognized that Ms. Love Wilder's TMJ dysfunction and migraines have an effect on her overall ability to function and perform work in the national economy and accounted for that effect in the RFC.

(ECF No. 14 at 21.)

Whether the ALJ characterized an additional impairment as severe is inconsequential given that the ALJ must consider the combined effect of all of the claimant's impairments, both severe and non-severe, in assessing her RFC. 20 C.F.R. §§ 416.920(e), 416.945(a); *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019).

Love Wilder argues that the ALJ erred in failing to consider her TMJ because "a frequent inability to open her mouth, caused by the TMJ dysfunction, *could* greatly affect her ability to communicate with co-workers, supervisors, or the public." (ECF No. 14 at 22-23 (emphasis added).) But Love Wilder has not pointed to any evidence that her TMJ actually affected her ability to communicate or otherwise impacted her residual functional capacity. It is true that, in one section of her brief, under the heading "Medical Treatment Records," Love Wilder offers a chronological outline of various medical records. In summarizing a visit with a nurse practitioner regarding her depression she states, "Of note, it was observed that Ms. Love Wilder offered only one or two word responses attesting that her jaw hurt and that it was painful to talk. (AR at 999)." (ECF No. 14 at 11.) But Love Wilder never referred to this, or any other evidence, in arguing

that her TMJ "could greatly affect her ability to communicate with co-workers, supervisors, or the public." (ECF No. 14 at 22-23.)

The court frequently criticizes ALJs for failing to connect their conclusions to broad summaries of the medical evidence. The expectation applies equally to attorneys challenging an ALJ's decision. Recounting evidence and then lobbing arguments is insufficient; counsel must connect the evidence to the arguments. Absent such a connection—an accurate and logical bridge, one may say—a litigant cannot sustain an argument. The court cannot, consistent with its role as an impartial decision-maker, step in for the attorney and cobble together disparate facts and arguments into coherent claims for relief.

Having failed to point to any evidence that her TMJ actually affected her ability to communicate, Love Wilder has failed to show that the ALJ erred in failing to explicitly discuss her TMJ.

As for her migraines, Love Wilder's argument focuses on the ALJ's failure to identify migraines as a severe impairment. But, again, this by itself is not a reversible error. She asserts, "Evidence that Ms. Love Wilder suffers from TMJ dysfunction and migraines is present throughout the medical record, as detailed above in the 'Medical Treatment Records' section." (ECF No. 14 at 21.) But, again, she does not connect her summary of the medical evidence to any argument for relief. Evidence that she suffered headaches does not, by itself, show that the ALJ erred by failing to explicitly discuss them.

As Love Wilder acknowledges, her headaches could be regarded simply as a symptom of one of the impairments the ALJ explicitly discussed. To support a finding of error, Love Wilder must demonstrate that her headaches resulted in limitations greater than those reflected in the RFC. She had not done so. In fact, she has not even made any such argument. Her argument is simply that, because the ALJ did not explicitly refer to her headaches, the court should directly award benefits or "at the least" remand the case. (ECF No. 14 at 23.) Love Wilder is not entitled to benefits or remand simply because the ALJ did not explicitly refer to her headaches, and Love Wilder has not otherwise shown any error meriting relief.

### 4.2. Listings

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). Thus, the Court of Appeals for the Seventh Circuit has repeatedly ordered remand "where an ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis …." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (citing *Brindisi v. Barnhart*, 315 F.3d 783, 786-87 (7th Cir. 2002); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2002); *Steele v. Barnhart*, 290 F.3d 936, 940-41 (7th Cir. 2002)); *see also Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

However, "[a]n ALJ is not required to explicitly reference every conceivably applicable Listing and provide a detailed analysis as to why he finds that the claimant's impairments do not meet or medically equal the Listing." *Levins v. Astrue*, No. 09-C-1067, 2010 WL 1881452, at *6 (E.D. Wis. May 10, 2010). "This is particularly true when, like here, the claimant is represented by counsel …" in the proceedings before the ALJ. *Levins v. Astrue*, No. 09-C-1067, 2010 WL 1881452, at *6 (E.D. Wis. May 10, 2010); *cf. Blackburn v. Astrue*, No. 10 C 5198, 2012 U.S. Dist. LEXIS 106, at *27 (N.D. Ill. Jan. 3, 2012) (finding error when the ALJ failed to mention a listing that claimant expressly asked the ALJ to consider in a pre-hearing memorandum); *Barger v. Astrue*, No. 4:07-cv-163-WGH-DFH, 2009 U.S. Dist. LEXIS 30137, at *10 (S.D. Ind. Mar. 25, 2009) ("when an ALJ is specifically asked to consider a listing by number both in the oral argument portion of the hearing and in the posttrial brief, the failure to specifically address that listing does require remand where the Court cannot trace the path of reasoning …").

With respect to Love Wilder's physical impairments the ALJ discussed only listing 1.04. He concluded, "the medical record does not document any associated neurological deficits, such as motor loss, atrophy, muscle weakness, or sensory loss. There is also no evidence of arachnoiditis or pseudoclaudication." (Tr. 16.) Love Wilder does not allege error with respect to the ALJ's assessment of listing 1.04 (or 12.04 regarding her mental impairments).

Love Wilder does argue, however, that the ALJ erred by not also considering the listing for inflammatory arthritis and, specifically, listing 14.09D. (ECF No. 14 at 23.) However, neither state agency medical consultant referred to the listing for inflammatory arthritis. And prior to her initial brief with this court Love Wilder had never argued that it applied.

Love Wilder's failure to argue earlier that listing 14.09D applied raises concerns of sandbagging. *See Levins v. Astrue*, No. 09-C-1067, 2010 U.S. Dist. LEXIS 53222, at *14 (E.D. Wis. May 10, 2010). But in *Levins*, the claimant had argued before the ALJ that a single, specific listing applied, only to later argue in the district court that the ALJ had erred by not considering a different listing. *Levins v. Astrue*, No. 09-C-1067, 2010 U.S. Dist. LEXIS 53222, at *14-15 (E.D. Wis. May 10, 2010); see also *Youmans v. Colvin*, No. 14 CV 7609, 2016 U.S. Dist. LEXIS 86433, at *16 (N.D. Ill. July 5, 2016) (citing *Watkins v. Colvin*, 3:12-CV-491, 2014 U.S. Dist. LEXIS 21790 (N.D. Ind. Feb. 21, 2014) (noting that counsel's statement that a particular listing does not apply usually prevents claimant from later asserting the opposite).

Unlike the claimant in *Levins*, Love Wilder failed to make any listing argument to the ALJ. In a pre-hearing brief counsel for Love Wilder stated that she "reserves the right to offer a listing argument at hearing and respectfully requests that all applicable listings he considered." (Tr. 321.) But at the hearing counsel did not present argument as to any listing.

> To meet listing 14.09D the claimant must have
>
> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Love Wilder argues,

> The "Medical Treatment Records" section above demonstrates that Ms. Love Wilder may meet the listing as she suffers from repeated manifestations of inflammatory arthritis with severe fatigue (*AR* at 43, 390, 391, 996, 999, 1000, 1001, 1002), malaise (*AR* at 43, 391, 404, 413, 422, 427, 443, 932, 935-936, 968), and she has a marked limitation in her completing activities of daily living (376, 972, 996, 1000, 1072). Though the ALJ found that Ms. Love Wilder had only a mild limitation in her ability to adapt or manage herself, this was solely in regard to the effect of her mental impairments, and clarified "[Ms. Love Wilder] has alleged limitations in her daily activities primarily due to pain, not a motivation associated with a mental health condition. (*AR* at 16).

(ECF No. 14 at 24-25.)

There is evidence in the record that could support a finding that Love Wilder suffered repeated manifestations of inflammatory arthritis along with severe fatigue and malaise, and the Commissioner does not argue otherwise (ECF No. 19 at 13). In support of her assertion that she has a "marked" limitation in completing her activities of daily living, she cites to the following evidence:

1. A July 18, 2016 physician visit for "bumps under arms" where in "History of Present Illness" the physician noted, "Reports poor function at home for activities such as cooking, light housekeeping, laundry." (Tr. 376.)

2. A June 4, 2018 physician visit for a pain management follow-up where the physician noted that she reported, "Function level is low, has been spending lots of time lying down in bed, tries to get up and do activities/chores in the home but this is not tolerable due to pain." (Tr. 972.)

3. An August 21, 2017 visit with a nurse practitioner to establish psychiatric care where the nurse practitioner noted that she reported "she is not able to do much in the house but does try." (Tr. 996.)

4. A November 22, 2017 visit with a nurse practitioner where she reported that she "Tries to keep moving with light house keeping. Always tired …." (Tr. 1000.)

5. A July 23, 2018 physician visit where she reported "she currently doesn't get out of bed 4 days out of the week on average." (Tr. 1072.)

(ECF No. 14 at 24-25.)

The Commissioner contends that Love Wilder's argument that she exhibited a marked limitation in her activities of daily living is insufficiently developed and therefore waived. (ECF No. 19 at 13.) While Love Wilder's argument is poorly developed, it is not so deficient as to result in forfeiture.

The Commissioner also points to evidence that suggests that Love Wilder was not as limited in her daily activities as she now alleges. For example,

> [s]he told one examiner that she was able to manage her activities of daily living "independently." (Tr. 20 citing (Tr. 361–62).) Moreover, she testified that she was able to ensure that her children were ready for school; that she would take her medications; and that she attempted to "clean up around the house." (Tr. 21.)

(ECF No. 19 at 13-14.)

The Commissioner, however, does not argue that the ALJ's failure to discuss listing 14.09D was harmless or that other conclusions in the ALJ's decision necessarily reflect a finding that Love Wilder did not have a marked limitation in her activities of daily living. The fact that there is conflicting evidence does not necessarily preclude a finding that Love Wilder had a marked limitation in her activities of daily living. But it is for the ALJ to assess that conflicting evidence. *See Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020); *Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016). Therefore, remand is required. *See Nicevski v. Colvin*, 222 F. Supp. 3d 734, 742 (N.D. Ind. 2016) (citing *Blundell v. Colvin*, 2016 U.S. Dist. LEXIS 102958, 2016 WL 4150887 (N.D. Ind., Aug. 5, 2016) (reversing where ALJ mentioned Listing 3.03 in the decision, but failed to mention Listing 3.02, and did not analyze evidence which could have led to a conclusion that the claimant met Listing 3.02); *A.D.B. ex rel. Burnett v. Colvin*, 2014 U.S. Dist. LEXIS 135950, 2014 WL 4804266 *3 (S.D.Ind., Sep. 26, 2014) ("Because the ALJ did not name the listing and did not mention the requirements for that listing, the court cannot conclude that the ALJ analyzed the listing.")); *see also R.J. v. Astrue*, No. 1:08-cv-1416-DFH-TAB, 2009 U.S. Dist. LEXIS 68455, at *24-26 n.3 (S.D. Ind. July 24, 2009).

**5. Conclusion**

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 29th day of January, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge